Filed 11/18/22  P. v. Faber CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>REGINA FABER,<br><br>    Defendant and Appellant. | A162913<br><br>(Mendocino County<br>Super. Ct. No. 21CR00391B) |

Appellant Regina Faber appeals from a final judgment after her no-contest plea to assault with force likely to cause great bodily injury and vandalism.  She challenges a condition imposed by the trial court in its order of formal probation, arguing that it is invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and unconstitutionally overbroad.  The condition requires her to participate in mental health treatment and to "take all medication as prescribed."  She also challenges various fines, based on recently enacted legislation.  We conclude that the mental health condition is invalid under *Lent,* and that the challenged fines must be vacated.  Therefore, we will strike the condition and direct the trial court to vacate the fines.  We otherwise affirm the judgment.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw our summary of the facts from the probation officer's report.

On the night of April 1, 2021, law enforcement officers were dispatched to a residence in Point Arena on reports of a disturbance. C.C. told the officers that appellant and several others, including his former wife, who is appellant's sister, came to his house and broke a window. Appellant and her sister climbed through the window and unlocked the front door, whereupon the other suspects rushed inside and assaulted him and C.R., who is C.C.'s elderly mother. C.R. later reported that she was assaulted when she tried to protect her son. During the incident, appellant struck her in the head with a metal Maglite-style flashlight. Both victims were able to escape and called 9-1-1. Officers later located and arrested appellant and her sister. When the victims returned to their home, they discovered several items had been stolen, including a couch, a Sony PlayStation 5, a television, cigarettes, money, and C.C.'s methamphetamine. C.R. was transported to the hospital for her injuries.

The district attorney filed a complaint against appellant and two co-defendants, charging her with first degree robbery in concert with others in an inhabited dwelling (Pen. Code, §§ 211/212.5/213, subd. (a)(1)(A) (count one));[1] burglary with a violent felony allegation (§§ 459/460, subd. (a), 667.5, subd. (c)(21) (count two)); assault with a deadly weapon (§ 245, subd. (a)(1) (count three)); and inflicting suffering on an elder (§ 368, subd. (b)(1) (count four)).

---

[1] All undesignated statutory references are to the Penal Code.

During the preliminary hearing, appellant entered a negotiated plea to an amended count three charging assault by means likely to cause great bodily injury under section 245, subdivision (a)(4), and to an amended count six charging her with felony vandalism under section 594, subdivision (b)(1).[2]

Prior to sentencing, appellant acknowledged to the probation officer that she had gone to the victims' house in order to help recover her sister's belongings. She admitted breaking a window and entering the house, although she reported that C.R. had attacked her, and did not admit to hitting the victim. She also admitted to smoking methamphetamine on a daily basis since she was 30 years old (she was 43 years old at the time of sentencing). She indicated that she was hoping to attend a residential drug treatment program upon release from custody. Among other things, the probation officer opined that appellant "could also benefit from an evaluation from a therapist or the Mental Health Department. An evaluation could better assess [her] history and determine if mental health treatment is appropriate. Considering her violent conduct and her lack of control over her emotions, she may require some level of counseling."

On June 10, 2021, the trial court suspended imposition of sentence and ordered appellant to serve 24 months of formal probation with 114 days custody with credit for time served. The terms of probation included a condition requiring her to enroll in substance abuse treatment. The terms also included the following condition, designated as condition number 26 (No. 26): "You shall be evaluated by a licensed therapist or the Mental Health Department, at your expense. If deemed appropriate by the therapist and your Probation Officer, you shall faithfully participate in counseling. Also,

---

[2] In the original complaint, count six (vandalism (§ 594, subd. (b)(1)) was charged against appellant's sister only.

3

you shall submit proof of enrollment, payment, and program completion to your Probation Officer, and take all medication as prescribed."

At the sentencing hearing, defense counsel objected to condition No. 26 under *Lent, supra,* on the ground that there was "no nexus whatsoever with any kind of mental health issue indicated." The prosecutor countered that the condition could "ensur[e] that mental health did not play a role in [appellant's] criminal conduct." Although the probation report indicates that appellant reported no psychological issues, the prosecutor referenced a portion of the report stating that she had attempted suicide on four occasions between 2000 and 2005 due to depression. In response, defense counsel stressed that the suicide attempts had occurred 16 years ago and were situational.

The trial court elected to impose the contested condition, stating: "I'm going to order that you be evaluated by both a substance abuse treatment specialist and a mental health professional to see if you have any substance abuse treatment needs or mental health treatment needs that can and should be addressed on probation so that you can be successful on probation and in life. If there are any issues about the results of that evaluation, contact your attorney, and you can bring it back before the Court if there's some probation order about substance abuse or mental health treatment that they want you to participate in that you don't agree with. All right? But I'm ordering the evaluation." The court also imposed various fines and fees.

Appellant timely appealed. On appeal, she asserts that the mental health probation condition is unreasonable and unconstitutionally overbroad. She also challenges the court-imposed fines and fees.

4

## DISCUSSION

**A.** *Applicable Law and Standard of Review*

Trial courts are granted broad discretion under section 1203.1 to impose conditions of probation. (*People v. Penoli* (1996) 46 Cal.App.4th 298, 302.) This discretion, however, is not unlimited, and a probation condition will be considered invalid if it: " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent, supra,* 15 Cal.3d at p. 486.) This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. (*Id.* at p. 486, fn. 1; see *People v. Balestra* (1999) 76 Cal.App.4th 57, 65, fn. 3.) "As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*).) We review the validity of a probation condition under *Lent* for abuse of discretion. (*People v. Moran* (2016) 1 Cal.5th 398, 403.)

**B.** *The Mental Health Condition is Invalid Under* **Lent**

**i. Appellant's Constitutional Arguments Are Not Forfeited**

Appellant contends that condition No. 26—requiring her to have a mental health examination, to continue in counseling if directed, and to take prescribed medications—is unreasonable under *Lent* and constitutionally overbroad. She maintains that the challenged condition unreasonably burdens her constitutional privacy rights against unwanted mental health medications and examinations.

Preliminarily, the Attorney General asserts that appellant forfeited any as-applied constitutional challenge because during the sentencing hearing she objected to the mental health probation condition on *Lent* grounds only. Challenges to probation conditions ordinarily must be raised in the trial court; if they are not, appellate review of those conditions will be deemed forfeited (*People v. Welch* (1993) 5 Cal.4th 228, 234-235).[3] Appellant counters that her objection under *Lent* was sufficient to preserve her constitutional challenge, citing to *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*). Appellant has the better argument.

*In Ricardo P.,* the Supreme Court addressed the permissible scope of an electronic search condition under *Lent,* expressly noting that it had not granted review to consider the condition "under [a] constitutional overbreadth analysis." (*Ricardo P., supra,* 7 Cal.5th 1113, 1128.) The condition required the juvenile to "submit to warrantless searches of his electronic devices, including any electronic accounts that could be accessed through these devices," even though there was no indication that he had used an electronic device in connection with the underlying offenses. (*Id.* at p. 1115.) Based on the record in that case, the high court held that the probation condition "imposes a very heavy burden on privacy with a very limited justification." (*Ricardo P., supra,* 7 Cal.5th at p. 1124.) The court

---

[3] We note that appellant does not contend that condition No. 26 is facially unconstitutional. An overbreadth challenge to a probation condition may be raised on appeal despite the failure to object at trial where it is claimed to be overbroad on its face and is "capable of correction without reference to the particular sentencing record developed in the trial court." (*In re Sheena K.* (2007) 40 Cal.4th 875, 887-889 (*Sheena K.*); accord, *People v. Patton* (2019) 41 Cal.App.5th 934, 946.) Here, appellant is not asserting a facial overbreadth challenge. Rather, she claims the condition is overbroad as to her based on the lack of evidence that she has any psychiatric condition.

6

instructed that the third prong of *Lent,* regarding the relationship of the condition to future criminality, includes a requirement that the condition not disproportionately burden significant rights and interests, *including* constitutionally protected privacy rights. (*Id.* at p. 1119) At no point in the opinion did the *Ricardo P.* majority indicate that a separate constitutional objection was required to preserve this issue if a defendant made an objection under *Lent.* We therefore may consider the substance of appellant's constitutionally-based arguments in evaluating whether condition No. 26 runs afoul of *Lent.*[4]

### ii. Requirement to take Prescribed Medications

The Attorney General does not seriously dispute that condition No. 26 satisfies the first two *Lent* prongs—the condition has no relationship to appellant's offenses, and the condition involves conduct that is not itself criminal. Therefore, at issue here is whether the condition is reasonably related to preventing future criminality. (See *Olguin, supra,* 45 Cal.4th at p. 379.) This relationship requires "more than just an abstract or hypothetical

---

[4] While appellant suggests that her constitutional argument is subject to de novo review, the cases she relies on—*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143 (*Shaun R.*) and *People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*)—are not on point. In stating that constitutional challenges are evaluated de novo, *Appleton* relies on *Shaun R.* which, in turn, relies on *Sheena K., supra.* As we have already noted, *Sheena K.* concerned a facial constitutional challenge, not an as-applied challenge: "Defendant's challenge to her probation condition as facially vague and overbroad presents an asserted error that is a pure question of law, easily remediable on appeal by modification of the condition." (*Sheena K., supra,* 40 Cal.4th 875 at p. 888.) Because appellant here does not raise a facial challenge, the de novo standard does not apply.

relationship between the probation condition and preventing future criminality." (*Ricardo P., supra,* 7 Cal.5th 1113 at p. 1121.)

Appellant contends that condition No. 26's requirement for her to "take all medications as prescribed" is unreasonable, relying primarily on *People v. Petty* (2013) 213 Cal.App.4th 1410 (*Petty*). In *Petty*, a defendant with a long history of mental health issues pleaded guilty to felony grand theft (§ 487, subd. (a)) for stealing jewelry from a friend's home. (*Petty, supra,* 213 Cal.App.4th at p. 1412.) The trial court placed him on probation subject to the condition that he take antipsychotic medications at the direction of his mental health worker, a condition he challenged on appeal. In striking the condition, the appellate court relied upon the rule that a probation condition which impairs constitutional rights must be justified by a compelling interest and must be narrowly drawn. (*Id.* at p. 1414.) The Court of Appeal struck the challenged condition "[b]ecause there was no medically informed showing . . . that defendant's adherence to a particular medication regime was reasonably related to his criminal offense or his future criminality . . . ." (*Id.* at p. 1421.) The court's conclusion was informed by (1) "[t]he potent nature of the psychoactive drugs which defendant may be ordered to take"; (2) defendant's fundamental due process freedom to refuse to take antipsychotic medications; and (3) evidence that the defendant committed the crime to pay off a drug debt, rather than because of any underlying mental health issues. (*Id.* at p. 1417.)

Appellant persuasively asserts the order here is analogous to the condition that was invalidated in *Petty* because it broadly requires her "simply to 'take all medication as prescribed' by an unidentified therapist", without any medical justification. She further emphasizes that, unlike in *Petty,* the record here is devoid of any suggestion that she has any mental

health problems, observing that the probation report itself indicated that there were no psychological issues.

We agree that the medication order is unreasonable on this record. Here, as in *Petty,* the record contains no "[m]edically-informed justification for insisting upon [appellant's] compliance with [her] mental health worker's medical decisions" (*Petty, supra,* 213 Cal.App.4th at p. 1420). In recommending mental health treatment, the probation officer merely cited to appellant's "violent conduct and her lack of control over her emotions." However, the probation report lacks any supporting medical evidence. The only evidence of any psychiatric history was appellant's 16-year-old prior suicide attempts. Significantly, the defendant in *Petty* had a more recent history of attempting suicide, yet the court of appeal held that "a suicide attempt five years before the crime provides no reasonable basis for imposing a medication requirement." (*Id.* at p. 1417.) The *Petty* court also rejected the suggestion that the condition requiring the defendant to obtain substance abuse treatment could support an order for psychiatric medication, explaining that "no medically based information was gathered to support such a supposition." (*Id.* at p. 1418.) The same is true here.

Relying on *In re Luis F.* (2009) 177 Cal.App.4th 176 (*Luis F.*), the Attorney General suggests that appellant's interpretation of the mental health condition is overly broad, arguing that the medication requirement is "undoubtedly limited to medication prescribed by a doctor to treat any potential mental disorders, especially those that may have manifested themselves when appellant committed the crime below or repeatedly attempted suicide." *Luis F.* is distinguishable.

In *Luis F.,* the appellate court held that a juvenile offender could be ordered as a condition of probation to continue to take medically effective

psychotropic drugs which had been prescribed by his doctor and which he had been taking voluntarily prior to being declared a ward. (*Id.* at pp. 192–193.) In contrast, here there is no indication that appellant has ever been prescribed psychiatric medications. Moreover, *Luis F.* involved a minor, not an adult. "[W]here an *adult* objects to imposition of antipsychotic medication as a condition of probation, before such medication may be required a medically informed record *must* be developed in the trial court. [Citation.]" (*Petty, supra,* 213 Cal.App.4th 1410, 1419, italics added.) And, unlike in *Luis F.,* here there is no medically informed showing that adherence to a psychiatric medication protocol is reasonably related to appellant's future criminality. Thus, even as construed by the Attorney General the condition is still unreasonable.

The Attorney General further attempts to distinguish condition No. 26 from the one at issue in *Petty,* arguing that the condition gives her the discretion to seek care by a licensed therapist of her choosing, and does not give the probation officer unfettered power and discretion to force her to participate in any specific type of treatment. Again, the fundamental problem with the medication order is that there is nothing in the record to suggest that appellant has any potential mental disorders. That the condition allows her to choose her own mental health provider does not overcome the underlying lack of a nexus to deterring potential future criminality. The Attorney General also argues that if appellant objects to a particular medication, she retains the right to file a petition for modification of her probation condition. However, there is no reason why she should be compelled to file a petition to modify an otherwise invalid condition.

Finally, the Attorney General urges us to modify the condition to require appellant to " 'take medication deemed necessary by her chosen

mental health doctor to treat a diagnosed mental condition, and only when reasonable necessary to deter or avoid future criminality.' " We decline the invitation as, on this record, there is no evidence that any medications are "reasonably necessary to deter or avoid future criminality." Alternatively, he argues that we should remand to the trial court with directions to cure the defects so that the trial court "can determine whether a medically-informed record exists and whether the condition is sufficiently narrow to address appellant's particular medications and circumstances." However, the record is already before us and, as we have already indicated, it does not contain any medical information that would support imposition of the condition. In sum, we conclude that, as in *Petty,* the medication condition is invalid under *Lent*.[5]

### iii.    Requirement for Mental Health Evaluation

Appellant next asserts that the order requiring her to submit to a mental health evaluation and participate in counseling " 'if deemed appropriate by the therapist and your Probation Officer' " is invalid under *Lent* and constitutes an improper delegation of authority. She relies largely on *In re Bushman* (1970) 1 Cal.3d 767 (disapproved on another ground in *Lent, supra,* 15 Cal.3d at p. 486, fn. 1) (*Bushman*).).

In *Bushman*, a pilot was convicted of disturbing the peace for his actions in protesting the condition of a runway and was sentenced to probation. (*Bushman, supra,* 15 Cal.3d 767 at pp. 771-772.) The Supreme Court invalidated a probation condition requiring the defendant "to seek psychiatric treatment at his own expense with a qualified psychiatrist approved by the court, and to continue the treatment as required by the

---

[5] Because we conclude that the medication order is invalid under *Lent,* we need not address appellant's additional argument that the order improperly delegates authority to a therapist.

doctor and approved by the probation department and the court." (*Id*. at p. 776.) The high court noted there was no evidence that he needed psychiatric care, nor was there any suggestion that he had any psychiatric condition relating to the crime of which he was convicted. (*Id*. at pp. 776-777.) The court explained that "without any showing that mental instability contributed to that offense, psychiatric care cannot reasonably be related to future criminality." (*Id*. at p. 777.) The same is true here.

Citing to the probation report, the Attorney General suggests that "[g]iven appellant's inability to control her emotions and cope with stress, her violent tendencies, her potential childhood trauma, and her need to daily self-medicate with methamphetamine, the order to seek out a therapist is motivated out of a concern and desire to maximize her chances of successfully completing probation." In the absence of any medically-based supporting evidence, this justification is insufficient under *Lent*. As the court observed in *Petty*: "While much faith is routinely placed in a probation officer's judgment as to how best to rehabilitate a defendant, we cannot leave the vital linkage between a medication condition of probation and the defendant's past or future criminal conduct to the hunch of a probation officer whose credentials to opine on such matters have not been established." (*Petty, supra,* 213 Cal.App.4th 1410 at p. 1419.) This observation applies equally to the mental health examination requirement at issue here.

In sum, we conclude condition No. 26 satisfies *Lent* and must therefore be stricken.

## C.   *Vacation of Fines and Fees under AB 1869 and AB 177*

Appellant contends that several administrative fees imposed on her by the trial court should be vacated given the recent passage of Assembly Bill No. 1869 (Stats. 2020, ch. 92, § 11; (AB 1869)), and Assembly Bill No. 177

(Stats. 2021, ch. 257, § 35; (AB 177)). The Attorney General concedes that the orders imposing these fines and fees must be vacated.

At the June 2021 sentencing hearing, the trial court imposed a $412 presentence investigation report fee, a $92 monthly supervision fee, a $237 supplemental report fee, and a $75 collection fee, all pursuant to section 1203.1b. The court also imposed a $33 monthly drug testing fee pursuant to section 1203.1ab, and a $50 installment payment fee pursuant to section 1205.

Following appellant's sentencing hearing, AB 1869 became effective. Among other things, AB 1869 added section 1465.9, which states that "[o]n and after July 1, 2021, the balance of any court-imposed costs pursuant [section] 1203.1b … as [that] section read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." Subsequently, the Legislature enacted AB 177, which amended section 1465.9 by adding subdivision (b). That provision states: "On and after January 1, 2022 the balance of any court-imposed costs pursuant to Section 1001.15, 1001.16, 1001.90, 1202.4, 1203.1, *1203.1ab,* 1203.1c, 1203.1m, 1203.4a, 1203.9, *1205,* 1214.5, 2085.5, 2085.6, or 2085.7, as those sections read on December 31, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (b), italics added.)

Because AB 1869 makes the unpaid balance of any probation report or administration fee as of July 1, 2021 unenforceable and uncollectible, and it requires that any portion of a judgment imposing such a fee be vacated, we shall order the trial court on remand to modify the judgment to vacate the probation report fee of $412, the supplemental probation report fee of $237, the monthly probation supervision fee of $92, and the collection fee of $75.

(See *People v. Clark* (2021) 67 Cal.App.5th 248, 259 (*Clark*); *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 953.)

Additionally, AB 177 renders any balance of the $50 installment payment fee and the $33 monthly drug testing fee that remained on or after January 1, 2022, unenforceable and uncollectible. We therefore also direct the trial court to vacate any portion of these fees that remain unpaid as of January 1, 2022. (*Clark, supra,* 67 Cal.App.5th 248 at p. 259.)

## III.

## DISPOSITION

The judgment is conditionally reversed, and the matter remanded to the trial court to modify the judgment as follows: (1) to strike probation condition No. 26; (2) to reflect that any balances remaining unpaid as of July 1, 2021 for the $412 probation report fee, the $237 supplemental probation report fee, the $92 monthly probation supervision fee, and the $75 installment payment system fee are unenforceable and uncollectable, and to vacate the portion of the judgment imposing those costs; and (3) to reflect that any balances remaining unpaid as of January 1, 2022 for the $50 installment payment fee and the $33 monthly drug testing fee are unenforceable and uncollectable, and to vacate the portion of the judgment imposing those costs.

Thereafter, the court shall amend its records to reflect modifications to its prior orders and shall forward a copy of the amended orders to all appropriate authorities. As modified, the judgment is affirmed.

14

DEVINE, J.[*]

WE CONCUR:

HUMES, P. J.

MARGULIES, J.

A162913N

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.